We'll move to our third case of the morning, number 21-23-34, Sadhish Siva v. American Board of Radiology. Mr. Margolis, good morning. We'll begin with you. Good morning. Good morning, Your Honor. Good morning. May it please the Court. I am Robert Margolis. I'm counsel for plaintiff appellant Dr. Siva. Since it was introduced nearly a century ago, ABR board certification has meant one thing, successful completion of postgraduate residency for entry into the field of radiology. Also during that time, continuing professional development, CPD products have been used by radiologists for the sole purpose of keeping current later in their careers. That those not subject to dispute. Plaintiff alleges that ABR has a legally tied certification and its own CPD product. Mr. Margolis, Mr. Margolis, can I, can I, I want to, I'm sorry to interrupt you so quickly, but I know our time is short and I'm interested in something you said, particularly regarding the market and buyers. And I'm specifically interested in paragraphs in your complaint that allege that market buyers view MOCs and CPDs as fungible products. There are many places in your complaint where you plead that the MOCs and the CPDs are similar products, but I'm interested in where you plead that they're fungible products. I know there are some paragraphs, and maybe you're going to point me to these paragraphs, so I'll just start with this. There are paragraphs in the complaint where you plead that radiologists who have to buy MOCs would prefer to buy something else, but those seem to me to just be conclusory allegations and not necessarily facts. So can you tell me where in the complaint I can look to find those, to find those allegations, unless you're going to tell me that those allegations are not important, in which case I'm interested to hear that as well. Well, in terms of the allegations about the products being, I guess, fungible and similar, it's that they serve the same purpose, which is to keep radiologists current, to measure... It's not, it's not, it's not, it's not just similar. What I'm, what I'm, what I'm concerned, you plead the similarity of the product, but where are the allegations in the complaint that demonstrate that market demand for the products is the same, or that there's fungibility between market demand for the products, as opposed to just similarity of the products? Where that is pled is in the history of the products before the tie, which under the court's immediate decision is, is the relevant, certainly a relevant place to look. And the idea that CPD products had always been sold separately from certification up until ABR began this new program, and indeed ABR had been involved in a, in a recertification type of product before MOC existed, which was sold separately. And this is really just the, the, the, that was really the precursor to, to MOC. So you look at the history of the products, how demand was formed about them throughout history. And what you're asking is really sort of, what's the nature of the market since the tie has been implemented? And of course, there's the problem with that is that's already after market demand has potentially been skewed, particularly in this case, because the tie has been effective and forced radiologists into the narrow lane of having to purchase MOC. Mr. Margolis, if, can I ask you to assume something that's counterfactual to what you've pled, but it'll help, help me understand the example. Suppose, for example, that the only aspect of MOC and the only thing that the payment, the annual payments go toward are the so-called OLA, the online multiple choice. Okay. Suppose that was the only component of MOC separate and apart, I guess, from a requirement that radiologists maintain their licensing in their jurisdiction. Would we have this lawsuit? We would, because again, it's, it's a vehicle for which they can charge fees that they might not otherwise be able to, to get from the marketplace because. But you'd have to allege, and I think that case would be quite, quite difficult for you because you'd have to allege, would you not, in a tying allegation that there's separate market demand for the O, the so-called OLA, the OLA itself stands alone as a separate product. We would have to allege that, that is correct. And we would have to do so by pointing out that, again, it's just another measure, however it may go about doing it. It's just another measure of radiologists current later or whether radiologists keep current later in their careers, which is, makes it similar, even though it perhaps manifests itself in a different way. So can I take that? It surprises me a touch that you answer that. Yes. My surprise is neither here nor there. It doesn't matter, but I wonder what the logical extension of it is. So are you, are you saying, or is your client saying that the radiology board, it really can't do anything by way of requiring continual education, whether in the form of OLA or this or that, it really just can't do anything. What, well, what we are saying is, or what we'd like ABR to do is go back to the voluntary recertification model where, I mean, if you understand certification to be what it has always been, which is establishing a credential at the beginning of one's career that they, that a radiologist successfully completed residency and which is, you know, like graduating college, graduating law school, once you've done it, you've done it. Right. But they made it, they made a choice to pivot. Did they not in whatever it was O2 or O6. And they've said, we're definitely focused on what we historically have been focused on, but we now have some interests. I mean, the grant, I got a question about the grandfathering, but forget that for a minute. You know, we have an interest in me and ensuring that those radiologists that are holding themselves out as board certified are, are maintaining a level of education that would show continued competence that way. And is it your position, they can't do that in a way, in any way consistent with section one? It's our position that it's a fact question as to whether that's in fact what this is all about. That, you know, we've, we've pled a number of facts that this really isn't about their, you know, whether their standards are being met or their ability to uphold their standards, or we wouldn't profess to be able to tell them how to determine if someone should properly be certified or how to, what their standards should be about whether someone is keeping current. But the question is, do you then revoke that initial, that initial grant of a credential that's based on an event, you know, a one-time event simply because they don't buy your second product? And that's what we're saying is the problem. They can, you know, we would ask that they compete in the, in the market for CPD products like any other, like any other competitor and let the, let the merits of their product determine whether it's successful or not. Okay. Do you want to reserve the remainder of your time for rebuttal? It's up to you. Uh, sure. Okay. Yeah. Thank you. Yeah. Very well. Um, is it Ms. Stilson? We'll turn to you. Good morning. I can't hear you. Hold on one second. You're, you're either muted or I'm not sure, but we can't hear you. Can you hear me? I apologize. Yeah, go ahead. Uh, you can, yeah, go ahead and start over if you wouldn't mind. Yes. No problem. Sorry about that. Technology. Um, good morning, your honors. May it please the court. My name is Jamie Stilson of Dorsey and Whitney, and I represent the Appley, the American Board of Radiology, which I will refer to in shorthand as ABR. Um, I'd like to start by saying your honor, I think you've, you've hit the nail on the head, um, at least from ABR's perspective, that this appeal is really about plaintiff's like for the current certification product that ABR offers, which is, um, a time limited certification that includes a continuing maintenance component. Um, the certification that the appellant sought was in fact in place over, you know, almost 20 years ago. He knew at the time that he got it, that he had to take an initial exam and that there would be an ongoing obligation to do maintenance of certification in order to retain that certificate. It is ABR that is permitted to determine what the scope of its certification product is. Uh, your honor asked, Mr. Margolis, some questions about demand, the recertification, or are you selling other educational material to these folks? Judge Ripple, that's a great question. I think one of the things that the appellant has pointed to to suggest that there was demand for a product prior to the current product that is offered was sort of a voluntary recertification program. And if you look specifically at plaintiff's complaint, there are very thin allegations about a voluntary recertification program. It's in paragraphs 130 and 134. Um, but recertification by its nature is different than MOC. It suggests that someone has to take a test to recertify. Um, I think, uh, instead ABR chose a different path. They decided that for, you know, their own profession and their decision to continually monitor the expertise of their radiologists, which makes sense in a field where technology, um, is happening and people need to keep current that the certification product offer going forward, uh, post 2002 required a maintenance component, not recertification. It could be maintained and retained if they were to go the MOC program. What are the MOC requirements? You, you make the, you make the point in your brief on page three that in your judgment, the plaintiff is, you know, pursuing a theory that would, that it would allow him as you put it to avoid the certification standards without complying with the MOC requirements. What are the MOC requirements? The MOC requirements, at least as they currently stand include, for example, that the OLA program, right? Where the, where the radiologists have to, you know, at various points throughout the year, uh, answer questions to ensure they are current with, with standards. So that is one component. I believe that there are others and components, and I don't want to get too far outside of the allegations. Your honors, obviously we are constrained under rule 12 to what the plaintiff has pledged. It has pled in his complaint, but there are other components to it as well. It's those other components that concern me, um, because the other components, as I understand them, let me just use some shorthand, but it's in the complaint. Sure. Um, are, are things like classes, seminars, conferences, uh, webinars, et cetera, different forms, different, different programming around professional learning that way. And I think what, what they're arguing is that there was definitely demand for that before the MOC program went into effect. And indeed there's, there's evidence of current demand for it because for those physicians that are grandfathered, you still see some doctors in the interest of staying up to speed in the field, ordering the question that I did. If this was narrow and it was limited to the, the board's decision around OLA and your professional judgment that OLA is what we want to do. I think that's an extremely difficult case to show that there's market demand for something akin, substantively akin to what OLA is, but that's, that's not the focus. I think the focus is they're making payments every year when on whatever basis they time basis they have to make them and they're paying for, for access to conferences and seminars and courses and webinars, et cetera, that are out there in the market. And so, you know, that is in there and they haven't, they allege that there's separate demand in the market for them at a minimum through the grandfathering allegation. I don't think so, your honor, because in part that that's the wrong question. The demand has to be for maintenance of certification, which is a package. It is a component and it is only, you can't, you can't evade, you can't evade the substance of the section one through the label, right? You, you can't, you know that you can't. So you have to grapple with, without using the label, what is the content of, of what you call MOC, but you could call it ABC or one, two, three. What's the content of it? ABR is entitled to determine the content of its certification. And I understand your honor, what you're doing is trying to pick apart the various components, but they are. No, I'm just trying to figure out whether, whether some of those components exist as products available in the marketplace for which there is separate demand. That's all I'm trying. They don't because they are not offered by ABR. Certification is only offered by ABR, your honor. And I, so, so how, so walk me through your analysis. If you said, um, as part of, um, the payment you make and as part of, of certifying, you have to acquire 10 baseball bats a year and they have to come from us. You can't go to Dick's Sporting Goods. I under, I, that's why it's a hypothetical. Well, your honor, I think ABR is permitted, permitted to decide based on the fact that there are, there's no possible way that you can, you can, you can't take the position that we can, we, we are the ones that certify and therefore we can define the content of the certification requirement without regard to the limitations of section one that can't possibly be your position. That is not our position, your honor, but ABR is permitted to decide what the criteria are to maintain the certification that they issue. And that has a continuing education component, but it is ABR that sets the parameters of that. And it includes the OLA and other things that are designed specifically to ensure that the radiologists that receive and retain its certification meet the criteria that ABR sets. The demand in the marketplace, your honor, is for ABR certification as a whole, not, not for, you know, other CPD products, which the plaintiff himself admits can be used for other purposes like licensing and CME. So the reason I use the baseball, the reason I use the baseball bats example is, is precisely because it's absurd. Okay. In other words, to see if you were going to argue functional relationship. And it sounds to me like that's a bit of what you're arguing. It is your honor, but it's also whether or not there was demand. The plaintiff has not shown there was any demand for MLC prior to the change in the product. It didn't exist. There's all kinds of allegations that people, people were attending courses. They were going to seminars. They were going to conferences and that the grant and that, and that the physicians today that are grandfathered do that. But those weren't specific to radiology, your honor. There are general allegations about CMEs, for example, that are required to maintain their medical license. Not that they were specific to a specific bar or expertise that is with respect to certification standards. And so that's the difference. I wanted to also point your honor's attention to the fact that other cases have addressed this very issue. Most recently in the, in the third circuit with the Kenny case, they looked at this very issue and rejected it. The products are not the same CPD as plaintiffs have alleged it is not MLC. And so the demand is different and the plaintiff cannot meet the standard under Jefferson Parish and its progeny to show that they are in fact separate products. They simply can't do it. I see my time is up, John. Okay. Very well. Thank you, Ms. Stilson. Mr. Margolis, we'll turn back to you. You got just a shade over a minute. Thank you, your honor. I just want to address a couple of points that, that you raised, which are correct. I mean, first of all, we're talking about how the products operate. We've spent most of Ms. Stilson spent most of her time talking about what the products do or what they like to say they do not what they, not what the demand for those products are, which we've alleged in our complaint. And of course, whether there is separate demand is a highly factual inquiry involving a number of different components. The media case had some 15 pages of facts going into various demand issues in a summary judgment context. What we're talking about here is the pleadings and have we alleged separate demand based on what Jefferson Parish asked us to do. And the fact that they spend their time talking about functional relation and business justification, we get to keep our standard. That's that's for another day. We respectfully ask that the court reverse the district court's decision and remand so we can have our day in court and proceed. Thank you. Okay. Very well. Thanks to both counsel for very high quality of your submissions here. And we will we'll take the case under advisement.